UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| IVANA MULDREW and DARREN HISE, | 1:09-cv-00023-OWW-DLB |
|---|---|
| Plaintiffs, | MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF MULDREW (Doc. 22) |
| v. | |
| COUNTY OF FRESNO, et al., | |
| Defendants. | |

## I.  INTRODUCTION.

Plaintiff Ivana Muldrew ("Plaintiff") is proceeding with this civil rights action against Defendants the County of Fresno and Kenneth Taniguichi ("Defendants") pursuant to 42 U.S.C. §§ 1981, 1983, and 28 U.S.C. § 1331.[1]  Plaintiff also asserts state law claims.

Defendants filed a motion for summary judgment on Plaintiff's claims on May 20, 2010.  (Doc. 22).  Plaintiff filed opposition to Defendants' motion for summary judgment on June 14, 2010.  (Doc. 29).  Defendants filed a reply to Plaintiff's opposition on June 21, 2010.  (Doc. 43).  Defendants also filed evidentiary objections to Plaintiff's deposition on July 8, 2010.  (Doc. 43).

---

[1] Plaintiff Muldrew asserts claims solely against the County.

**1**

## II. **FACTUAL BACKGROUND**.

Plaintiff commenced employment as a defense investigator with the Fresno County Public Defender's Office ("PDO") in 2001. (PUMF 1). According to Plaintiff, subsequent to hiring her, then-Public Defender Charles Dreiling told Plaintiff that he would have preferred to hire a "black male", but that he hired "the next best thing" in Plaintiff.[2] (PUMF 1). Sometime in 2001, Plaintiff was assigned to the PDO's Dependency Unit, which was stationed in a building separate from main PDO office. (Opposition, Ex. 1 at 163-64). The PDO gave Plaintiff parking privileges at the dependancy building and a remote control device to access the secured underground parking structure. (PUMF 32).

**Mail Run Assignment**

In 2004, responsibility for the inter-office mail run between the dependancy unit and the PDO's headquarters was transferred to Plaintiff. (PUMF 33). Plaintiff's parking privileges facilitated her mail run.[3] The only other PDO employee in the dependancy office with parking privileges in 2004 was an attorney. (MSJ, Ex. D at 379).[4] Plaintiff objected to the newly-imposed mail run task

---

[2] Defendants' hearsay objection to Plaintiff's statement regarding what Dreiling told her is sustained in part. Dreiling's hearsay statement is inadmissible to prove the truth of the matter asserted, i.e., that Dreiling preferred to hire a male. It is admissible for Plaintiff's response and state of mind. Fed. R. Evid. 802. Unless noted otherwise, Defendants' evidentiary objections to Plaintiff's declaration are overruled.

[3] In here deposition, Plaintiff initially stated that Celia Alderete ("Alderete"), a PDO investigator with seniority over Plaintiff, "tied" the mail run to the investigator position with parking privileges. (Opposition, Ex. 1 at 163). Later in her deposition, Plaintiff stated that George Cajiga first asked Plaintiff to do the mail run. (MSJ, Ex. D at 376.)

[4] PUMF 36 avers: "when Alderete came to Dependency, there was an attempt to transfer the assigned parking and remote to Alderete or Carmen Romero, an attorney, but not the mail run." In support of PUMF 36, Plaintiff cites Exhibit

**2**

because Plaintiff believed it constituted "working out of class." (PUMF 33). In response to Plaintiff's complaints about the mail run, then-Public Defender George Cajiga told Plaintiff he could assign her to any job he determined appropriate. (Id.). Plaintiff believed transfer of the mail run responsibility to her was racially motivated. (PUMF 34). Plaintiff also alleges that on one occasion, an African American office assistant named Mike Jones was called from another area of the office to move boxes. (PUMF 15). Plaintiff avers that mail run assignment and box-moving incident both evince a pattern at the PDO of assigning African American employees to menial tasks.

**The "Martinez-Baly" Complaint**

In the first half of 2007, Plaintiff heard rumors that Margarita Martinez, an attorney with the PDO, was requesting that Plaintiff not be assigned to her cases.[5] (PUMF 17). In November of 2007, an unidentified co-worker told Plaintiff that she overheard PDO attorney Scott Baly tell another unidentified attorney that Plaintiff was incompetent. (PUMF 19). Plaintiff reported Baly's statement to Diaz, Delmare, and Pete Jones, all of whom were supervising attorneys at the PDO. (PUMF 20).[6] Plaintiff

---

1, Plaintiff's deposition transcript at pages 163-164, and Exhibit 2, Plaintiff's declaration, at paragraph 15. Defendant's foundation objection to paragraph 15 of Plaintiff's declaration is sustained. Plaintiff's deposition testimony at pages 163-164 does not reference any attempt to transfer the assigned parking. Accordingly, there is no admissible evidence in support of PUMF 36.

[5] Defendants' hearsay and foundation objections to lines 21-23 of paragraph 6 of Plaintiff's declaration are sustained. Defendants' hearsay, relevance, and speculation objections to lines 23-25 of paragraph 6 of Plaintiff's declarations are sustained.

[6] Defendants' foundation and speculation objections to paragraph 9 of Plaintiff's declaration are sustained.

3

states that to her knowledge, no investigation was made into Baly's alleged comment. (PUMF 24).

During her annual evaluation in January 2008, Plaintiff learned from Robert Delmare ("Delmare"), a PDO attorney, that Martinez had lodged a complaint against Plaintiff for failing to contact a witness. (PUMF 23). Delmare told Plaintiff she was being informally reprimanded and that he was "only doing it to 'pacify Martinez.'" (Id.).[7] Despite Martinez's complaint, Plaintiff received a satisfactory annual evaluation. (Id.).

In February 2008, Plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC") and California's Department of Fair Employment and Housing ("DFEH"), alleging discrimination on the basis of race, color, and retaliation. Plaintiff's EEOC/DFEH complaints stated that she had been forced to work out of class with respect to the mail run; that she had been looked over for training, high profile assignments, and supervisory positions; that the PDO had not addressed the alleged statement by Baly about Plaintiff's competence; and that Martinez had lodged the complaint against Plaintiff for failing to contact a witness in order to harass her on the basis of race. (PUMF at 25, 26). Plaintiff further alleged that the hiring, retention, and promotion practices of the PDO were discriminatory. (PUMF 26).

**Alderete Complaint**

In or about April 2007, Alderete became Plaintiff's supervisor. (PUMF 35). In June 2008, Plaintiff took medical leave

---

[7] Defendant's hearsay objection to lines 8-9 of paragraph 8 of Plaintiff's declaration is sustained in part. Plaintiff's hearsay statement is inadmissible to prove the truth of the matter asserted.

"for a few weeks." (PUMF 37). When Plaintiff returned to work, she discovered that Alderete had assigned Plaintiff 6 to 16 more assignments than other investigators were averaging at the time. (PUMF 39). Plaintiff was alarmed at the amount of work and the short schedule in which to complete it. (PUMF at 41). Plaintiff states that her ability to perform her assignments was hampered at the time because her car was in the shop. (PUMF 40).

Plaintiff communicated her concerns about her workload to Alderete, and Alderete accused Plaintiff of being unable to manage her time. Alderete told Plaintiff she would meet with her every day and go over her work. According to Plaintiff, Alderete became angry and slammed her hand down on the desk while yelling at Plaintiff. (PUMF 42). After meeting with Alderete, Plaintiff met with Elizabeth Diaz ("Diaz"), an attorney at the PDO, and Kenneth Taniguchi ("Taniguchi"), the Public Defender, to express her concerns. (PUMF 42).

Plaintiff told Diaz and Taniguchi that she believed Alderete had given her excess assignments in order to set her up to fail, and that she felt Alderete was being discriminatory. (PUMF 43). At some point during the meeting with Diaz and Taniguchi, Plaintiff referenced Alderete's involvement in the termination of Stanley Peterson, an African American investigator.[8] Plaintiff also expressed her belief that Alderete's negative attitude was due in part to the fact that Alderete wanted Plaintiff's parking space. (Muldrew Dec. at 5). Diaz and Taniguchi offered to remove

---

[8] Defendants' hearsay and foundation objections to paragraph 20 of Plaintiff's declaration are sustained in part. Plaintiff's statement regarding Peterson's termination is inadmissible to prove the truth of the matter asserted. Fed. R. Evid. 802.

5

Plaintiff from Alderete's supervision, but Plaintiff did not want to be moved out of the Dependancy unit, which was associated with her degree in social work.[9] (PUMF 46).

On July 18, Plaintiff reduced her complaints about Alderete to a written memorandum. (Mudlrew Dec. at 6). During a union meeting, Plaintiff told co-workers they could sign her written complaint against Alderete. (Id.). Plaintiff's co-workers Vinnie Lee, Darren Hise, and Leticia Castellanos singed Plaintiff's complaint. (DUMF ). Plaintiff subsequently submitted the July 18 complaint to Deborah Harper ("Harper"), a Senior Personnel Analyst at the PDO. (Harper Dec. at 1-2). The July 18 complaint submitted by Plaintiff contained no mention of race, color, or ethnicity. (Id. at 2).

On or about July 24, 2008, Plaintiff submitted a formal complaint pursuant to Fresno County's Discrimination Complaint Procedure. (Id. at 2). Plaintiff checked the boxes for "race" and "color" on the county complaint cover sheet and attached the July 18 letter to the cover sheet. (Id.; MSJ Ex. C). In response to Plaintiff's complaint, the PDO requested that Personnel conduct an investigation. (Harper Dec. at 2). Harper and another Personnel Analyst, Charlotte Tilkes ("Tilkes"), were assigned to conduct the investigation. (Id.). Harper and Tilkes performed their investigation of Plaintiff's discrimination complaint in compliance with Fresno County's policies and procedures. (Id.).

Harper and Tilkes interviewed co-Plaintiff Darren Hise ("Hise") in connection with their investigation of Plaintiff's

---

[9] Defendant's foundation objection to page 5, lines 25-27 of Plaintiff's declaration is sustained.

**6**

discrimination complaint. (Id.). Hise attempted to corroborate some of Plaintiff's claims. (MSJ, Ex. O). Approximately a week after Hise's interview with Tilkes and Harper, Diaz, Hise's supervisor, asked to meet with Hise and questioned him about Alderete's problems with Plaintiff. (Hise Dec. at 4). Hise felt uncomfortable because he felt Diaz was trying to learn what Plaintiff had told Tilkes and Harper, and on the following day, August 21, Hise contacted Tilkes and Harper to discuss his meeting with Diaz. (Id.). During Hise's meeting with Tikles and Harper, they became defensive and asked Plaintiff if he was accusing them of divulging the substance of their prior interview of Plaintiff. (Id.). Later that day, Hise was placed on administrative leave. (Id. at 5).

After conducting their investigation, Hise and Tilkes concluded that Plaintiff has not been subjected to discrimination. (Harper Dec. at 3). Hise and Tilke's finding was published in a written report on August 25, 2008. (MSJ, Ex. O). Plaintiff went on medical leave from September 8, 2008 to October 13, 2009. (DUMF 32). By the time Plaintiff returned to work on October 13, Plaintiff had been removed from Alderete's supervision. (Id.).

### III. **<u>LEGAL STANDARD</u>**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

7

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." Id. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury

**8**

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## IV. DISCUSSION.

**A.   Plaintiff's FEHA Claims**

Plaintiff's first cause of action is for discrimination and retaliation in violation of California Government Code section 12900 *et seq.*, California's Fair Housing and Employment Act (FEHA). Plaintiff asserts FEHA claims solely against the County of Fresno. Employers are subject to *respondeat superior* liability for the discriminatory conduct of supervisory employees. *E.g. Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 70 (Cal. Ct. App. 1996).

**1. Retaliation Claim**

California Government Code section 12940(h) provides that it shall be an unlawful employment practice

> for any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Cal. Gov. Code § 12940(h).  To establish a prima facie case of retaliation under section 12940(h), an employee must show that (1) she engaged in a "protected activity;" (2) she was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the averse employment action. *E.g. Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (Cal. 2005) (citations omitted).  Once an employee establishes a prima facie

9

case, the employer is required to offer a legitimate, non-retaliatory reason for the adverse employment action. *Id*.

It is undisputed that Plaintiff has established the first element of a prima facie retaliation claim by providing evidence that she engaged in protected activity by filling several complaints alleging discrimination by the PDO. According to Plaintiff, she first presented a complaint alleging racial discrimination in 2008. (MSJ, Ex. D at 212).

Defendants' contend that Plaintiff has not suffered an "adverse employment action" within the meaning of FEHA, as Plaintiff concedes she was never subjected to disciplinary action, demoted, or suffered a reduction in compensation. (DUMF 27).[10] Plaintiff also concedes she was given step raises on every occasion she became eligible and received only positive performance evaluations. (DUMF 28, 29). Plaintiff cites *Yanowitz* for the proposition that "a series of subtle, yet damaging, injuries" can cumulatively amount to adverse employment action. 36 Cal.4th at 1055-56. Plaintiff contends that the *Yanowitz* standard for adverse action is satisfied by the combination of (1) the PDO's failure to investigate Plaintiff's claim of "defamation"; (2) the lack of opportunities afforded to Plaintiff; and (3) the PDO's failure to respond to Plaintiff's hostile work environment complaint. (Opposition at 13).

///

---

[10] Plaintiff's sole basis for disputing DUMF 27 is that she received an informal reprimand from Robert Delmare. The fact that Plaintiff received an informal reprimand does not controvert DUMF 27, nor does it rise to the level of adverse employment action. *Akers*, 95 Cal. App. 4th at 1457 ("mere oral or written criticism of an employee or a transfer into a comparable position does not meet the definition of an adverse employment action under FEHA").

**10**

Of the three "subtle injuries" identified by Plaintiff, only one occurred after Plaintiff filed her first discrimination complaint in 2008: the PDO's alleged failure to respond to Plaintiff's claim of hostile work environment.[11]  No rational jury could find that Plaintiff's allegation is true, as the record establishes that the PDO responded to Plaintiff's complaints regarding Alderete. Diaz and Taniguchi offered to remove Plaintiff from Alderete's supervision during their first meeting with Plaintiff regarding her complaints about Alderete. (PUMF 46). Additionally, it is undisputed that Plaintiff's complaint was investigated pursuant to the County's discrimination complaint procedure. (Doc. 29, Plaintiff's Response to DUMF 19). After an investigation, the County's investigators concluded that Plaintiff had not been discriminated or retaliated against, and these findings were communicated to the PDO's top decision-maker, Taniguchi.  (Doc. 29, Plaintiff's Response to DUMF 22, 23). Despite the County's finding that Plaintiff had not been discriminated against, the PDO removed Plaintiff from Alderete's supervision. (Doc. 29, Plaintiff's Response to DUMF 32). Although Plaintiff complains that she was left under Alderete's supervision for two months after filing her complaint, Plaintiff concedes that the PDO offered to remove Plaintiff from Alderete's supervision when Plaintiff lodged her complaint, but that Plaintiff refused the offer because she did not want to be removed from the dependancy unit.  (Muldrew Dec. at 5).

---

[11] Plaintiff's complaint about Baly's alleged statement that Plaintiff was incompetent occurred in 2007, and Plaintiff fails to allege that any promotional opportunities became available after she filed her first discrimination complaint in 2008.

**11**

Because Plaintiff has not established that any adverse action was taken against by any person with knowledge of her discrimination complaints, Defendants' motion for summary judgment on Plaintiff's FEHA retaliation claim is GRANTED. *E.g. Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987) (citation omitted) (failure to establish the existence of a prima facie case renders a grant of summary judgment appropriate).[12]

### 2. **FEHA Discrimination**

For a prima facie case of discrimination under FEHA, a plaintiff must establish: (1) she was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position she held, (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. *E.g. Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 714 (Cal. Ct. App. 2008).

It is undisputed that Plaintiff is a member of a protected class, (DUMF 1), and that Plaintiff was performing her job competently, (DUMF 29). The complaint alleges that Alderete subjected Plaintiff to a hostile work environment on account of Plaintiff's race, and there is some evidence to support Plaintiff's allegation, as Plaintiff's declaration indicates that she perceived Alderete being discriminatory against African American employees at the PDO. (Mudlrew Dec. at 4-6). Very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive;

---

[12] As discussed below, Plaintiff alleges that Alderete created a hostile work environment subsequent to Plaintiff's 2008 EEOC filing, however, it is undisputed that Alderete did not know about Plaintiff's EEOC complaint during the relevant time period.

**12**

any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). Because there is a factual dispute regarding whether Alderete created a hostile work environment for Plaintiff on account of Plaintiff's race, summary judgment on Plaintiff's FEHA discrimination claim is inappropriate and is DENIED.

**B. Plaintiff's Section 1981 Claim**

Plaintiff asserts her section 1981 claim solely against the County of Fresno. Local governments are "persons" subject to suit for constitutional torts. *See Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) as applied to section 1983 claims)." Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside of the scope of these policies or customs.

> [T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional [*10] tort. In particular, … a municipality cannot be held liable solely because it employs a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

*Monell*, 436 U.S. at 691.

As alternatives to proving the existence of a policy or custom of a municipality, a plaintiff may show: (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final

**13**

policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Id*.

### 1. Retaliation

In order to establish a retaliation claim, Plaintiff must demonstrate that (1) she engaged in a protected activity (2) Defendant subjected her to an adverse employment action, and (3) 'a causal link exists between the protected activity and the adverse action.'" *See, e.g., Hernandez v. City of Vancouver,* 277 Fed. Appx. 666, 669 (9th Cir. 2009) (unpublished) (citing *Manatt v. Bank of America*, NA, 339 F.3d 792, 800 (9th Cir. 2003)). Plaintiff is a member of a protected class, and Plaintiff engaged in protected activity by filing her first racial discrimination complaint in 2008. (MSJ, Ex. D at 212). Plaintiff has not established a causal link between the adverse action of which she complains and her protected activity.

The only adverse action allegedly taken against Plaintiff after 2008 was Alderete's creation of a hostile work environment.[13] Plaintiff cannot state a prima facie case of retaliation based on

---

[13] As discussed above, Plaintiff fails to establish a prima facie case of retaliation based on the PDO's response to Plaintiff's complaints regarding Alderete.

**14**

Alderete's actions because Plaintiff does not dispute that Alderete had no knowledge of Plaintiff's discrimination complaint at the time she allegedly created a hostile work environment for Plaintiff. (Plaintiff's Response to DUMF 9). Moreover, Alderete's action cannot be attributed to the County. It is undisputed that Alderete is not a final decision-making official at the PDO, and Plaintiff presents no evidence regarding possible alternative grounds for municipal liability. *See Menotti*, 409 F.3d at 1147 (*Monell* liability may be established where action was taken pursuant to municipal policy, where top decision maker delegated authority to offending personnel, or where top decision maker ratified the discriminatory conduct of subordinates). Accordingly, Defendants' motion for summary judgment on Plaintiff's retaliation claim under section 1981 is GRANTED.

### 2. Discrimination

In order to establish a discrimination claim under section 1981, Plaintiff must demonstrate: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by Defendant; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *See, e.g, Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 838 (9th Cir. 2006); *see also Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1145 (9th Cir 2006). The rights enumerated in section 1981 include the right to the "enjoyment of all benefits, privileges, terms, and conditions of the Contractual relationship," which encompasses the relationship between employer and employee. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008).

///

Plaintiff's section 1981 discrimination claim is based on her contention that she was subjected to a hostile work environment. (Opposition at 13-14). Plaintiff contends that her hostile work environment claim is established by:(1) the PDO's failure to investigate Baly's alleged statement that Plaintiff was incompetent; (2) the "placating reprimand" Plaintiff received due to Martinez's complaint about her; (3) the excessive, unreasonable assignments by Alderete; and (4) the poor representation of African Americans within the PDO.  (Opposition at 13-14).

Hostile work environment claims must be based on severe, pervasive discriminatory conduct that is so offensive as to unreasonably interfere with an employee's work performance. *See, e.g., Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). As the Ninth Circuit explained in Vasquez:

> To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment...
>
> To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." In addition, "the working environment must both subjectively and objectively be perceived as abusive.

*Id.*

Plaintiff provides no evidence that any action attributable to the County created "a workplace atmosphere so discriminatory and abusive that it unreasonably interfere[d]" with Plaintiff's

**16**

conditions of employment. *Id*. Even assuming that the conduct Plaintiff complains of was severe enough to create a hostile work environment, the record does not permit a rational jury to find that the County may be held liable for such conduct. None of the discrete acts Plaintiff complains of were carried out by Taniguchi, the final decision maker at the PDO, and there is no evidence regarding possible alternative grounds for municipal liability. See *Menotti*, 409 F.3d at 1147 (*Monell* liability may be established where action was taken pursuant to municipal policy, where top decision maker delegated authority to offending personnel, or where top decision maker ratified the discriminatory conduct of subordinates). Plaintiff's allegation regarding "poor representation of African Americans" at the PDO is not supported by the record, as Plaintiff's argument is based on the unremarkable fact that the PDO's demographics do not reflect Fresno County's demographics. (Opposition at 1-2; 13). The Ninth Circuit has consistently rejected the usefulness of general population statistics as a proxy for the pool of potential applicants where the employer sought applicants for positions requiring special skills. *Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir. 1987) (citing *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 482-83 (9th Cir. 1983)); *Foss v. Thompson*, 242 F.3d 1131, 1135 (9th Cir. 2001) (same). Defendants' motion for summary judgment on Plaintiff's section 1981 claim is GRANTED.

### D. Section 1983 Claim

Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of a federally protected right. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624

**17**

(9th Cir. 1988); 42 U.S.C. § 1983. In order to establish a prima facie case of employment discrimination under section 1983, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), or with direct or circumstantial evidence of discriminatory intent." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). To create a prima facie case under the *McDonnell Douglas* framework, a plaintiff must show that: (1) she belonged to a protected class;(2) she was subjected to an adverse employment action; and (3) similarly situated employees not in her protected class received more favorable treatment. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002).

Plaintiff's prima facie case of discrimination under section 1983 is premised on (1) the fact that only three or four percent of the employees at the PDO are African American; and (2) Taniguchi's response to Plaintiff's complaint regarding Alderete. (Opposition at 14-15). With respect to Plaintiff's argument regarding the PDO's demographics, Plaintiff fails to provide relevant evidence to substantiate her claim. *See, e.g. Robinson*, 847 F.2d at 1318 (where the employer sought applicants for positions requiring special skills, relevant inquiry depends on demographics of the applicant pool, not the general population).

Plaintiff's sole allegation against Taniguchi is that he required Plaintiff to file a written complaint about Alderete before he took action. Plaintiff's opposition to provides:

> When Muldrew reports she is being treated differently and met with open hostility by Alderete in July, 2008, Mr. Taniguchi, the Department head, responds by telling her

**18**

> if she wants something done she has to file a complaint. Thus Mr. Taniguchi's understanding of the County's policy is that he has no responsibility to ensure the work place is not hostile in the face of verbal reports of discrimination, harassment or retaliation, no duty to investigate absent a formal written complaint. This is unfortunately entirely consistent with the lack of response to Muldrew's prior complaints in November 2007. And it also demonstrates why training only supervisory personnel in regard to County policies on discrimination is a way to discourage reporting.

(Opposition at 15).

Plaintiff has not provided any evidence that Taniguchi's response was motivated by racial animus, and there is nothing inherently discriminatory about requiring an employee to reduce her claims to writing before conducting a formal investigation. Nor does Plaintiff present any evidence that Taniguchi responded to Plaintiff's complaint in a different manner from Taniguchi's response to other employee complaints. Plaintiff's version of Taniguchi's response to her complaint about Alderete is also belied by the record, as Plaintiff concedes that Diaz and Taniguchi offered to remove Plaintiff from Alderete's supervision during their first meeting with Plaintiff regarding her complaints about Alderete. (PUMF 46). Because Plaintiff has failed to establish a prima facie claim under section 1983 against the County, Defendants' motion for summary judgment on her claim is GRANTED.

## **ORDER**

For the reasons stated:

1) Defendants' motion for summary judgment on Plaintiff's FEHA retaliation claim is GRANTED;

2) Defendants' motion for summary judgment on Plaintiff's FEHA discrimination claim is DENIED;

3) Defendants' motion for summary judgement on Plaintiffs

**19**

claims under 42 U.S.C. §§ 1981 and 1983 are GRANTED;

4) Defendants shall submit a form of order consistent with this Memorandum Decision within five (5) days following electronic service of this decision.

IT IS SO ORDERED.

Dated:    August 10, 2010              /s/ Oliver W. Wanger
                                   UNITED STATES DISTRICT JUDGE