**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IVANA MULDREW and DARREN HISE,**<br><br>          **Plaintiffs,**<br><br>     **v.**<br><br>**COUNTY OF FRESNO, et al.,**<br><br>          **Defendants.** | **1:09-cv-00023-OWW-DLB**<br><br>**MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF HISE (Doc. 23)** |

## I. INTRODUCTION.

Plaintiff Darren Hise ("Plaintiff") is proceeding with this civil rights action against Defendants the Country of Fresno and Kenneth Taniguichi ("Defendants") pursuant to 42 U.S.C. §§ 1981, 1983, and 28 U.S.C. § 1331. Plaintiff also asserts state law claims.

Defendants filed a motion for summary judgment on Plaintiff's claims on May 20, 2010. (Doc. 23). Plaintiff filed opposition to Defendant's motion for summary judgment on June 14, 2010. (Doc. 28).

## II. FACTUAL BACKGROUND.

Plaintiff commenced employment as a defense investigator with the Fresno County Public Defender's Office ("PDO") in 2000. (PUMF 1). In 2003, Plaintiff was promoted to "Senior Defense

**1**

Investigator," a supervisory position that was essentially the top investigative position within the PDO. (PUMF 2).

**Plaintiff's Leave Request**

On April 2008, Plaintiff submitted a request for time off for the week of April 14-18. Taniguichi reviewed the request and believed that Plaintiff failed to complete the request by not identifying the type of leave requested. Taniguichi denied the first day of leave requested and provided a note to Plaintiff directing him to see his supervisor regarding the remaining leave requested. Plaintiff sought an explanation regarding the initial denial of leave and spoke to Taniguichi. (Opposition, Ex. 1 at 273). During the discussion, Taniguichi asked Plaintiff what his requested medical leave was for. (Id. at 274). Plaintiff responded that Taniguichi did not have a right to know, and that Plaintiff would contact his union representative as recourse for denial of the leave. (Id. at 274). Plaintiff then left Taniguichi's office, prompting Taniguichi to go out into the hall and yell for Plaintiff to return. (Id. at 275). Taniguichi approached Plaintiff in the common area and repeated his query about Plaintiff's leave request, and Plaintiff continued to assert that Taniguichi was not entitled to know. (Id. at 276). Ultimately, Plaintiff and Taniguichi returned to his office, quarreled over their respective rights for a few more minutes, and ultimately reached a resolution whereby Plaintiff did not reveal the reasons for his leave request but was granted the full leave requested. (Id. at 279-281).

///

///

**Muldrew's Complaint**

In June 2008, one of Plaintiff's co-workers, Ivana Muldrew, returned to work at the PDO's office after having been on leave for several weeks. (PUMF 12).  Muldrew told Plaintiff that she felt that her supervisor, Celica Alderete, was unfairly assigning Mudlrew excess work in order to set her up for failure. (PUMF 17). Plaintiff did not have a good relationship with Alderete and had witnessed Alderete use profanity and slam doors. (PUMF 18). Plaintiff told Muldrew that he agreed that Alderete's conduct was hostile and designed to set Muldrew up for failure.  (PUMF 17).

On July 18, 2008, Plaintiff signed a letter authored by Muldrew which detailed Alderete's treatment of Mudlrew and also alleged other unprofessional conduct on Alderete's part.  (PUMF 19).  The letter was addressed to the the PDO.  Plaintiff alleges that he signed the Muldrew's letter in order to prompt the County to investigate and respond to Alderete's conduct toward Muldrew as well as "racial issues" Plaintiff perceived were being caused by Alderete.[1]  (PUMF 19).  On July 24, 2008, Muldrew submitted a discrimination complaint form to the County's Labor Relations Division with the Junly 18 letter attached.  Muldrew checked the boxes "race" and "color" on the discrimination complaint form.

Charlotte Tilkes and Deborah Harper interviewed Plaintiff in connection with Muldrew's complaint in August 2008.  Hise confirmed Muldrew's complaints to Tilkes and Harper.   Plainitff also

---

[1] Plaintiff contends that "Alderete was and is a very vocal proponent of Hispanics, and openly and frequently lobbied for promotions of Hispanic employees and for additional pay for Spanish speaking investigators."  Plaintiff further contends that "Aldrete's advocacy reached a point of racial preference" and that Aldrete's "advocacy frequently occurred during meetings with...supervising attorneys."  (PUMF 5).

**3**

confirmed that Muldrew had been subjected to criticism by an attorney in the PDO, Marguerita Martinez, that Plaintiff believed was not based upon Muldrew's work performance. Finally, Plaintiff indicated that Alderete's close relationship with Assistant Public Defender Elizabeth Diaz ("Diaz") affected employees' willingness to "cross" Alderete. Plaintiff was told that he was not to discuss his interview, and that it would remain confidential. (PUMF 20).

Approximately a week after Plaintiff's interview with Tilkes and Harper, Diaz, Plaintiff's supervisor, Diaz, asked to meet with Plaintiff and questioned him about Alderete's problems with Muldrew. Plaintiff felt uncomfortable because he felt Diaz was trying to learn what Plaintiff had told Tilkes and Harper. (PUMF 21). The following day, on August 21, 2008, Plaintiff contacted Tilkes and Harper to discuss his concerns regarding his meeting with Diaz. During Plaintiff's meeting with Tikles and Harper, they became defensive and asked Plaintiff if he was accusing them of divulging the substance of their prior interview of Plaintiff. Plaintiff wanted to leave the meeting, but Harper insisted that he stay. Harper and Tilkes tried to give Plaintiff paperwork to file a complaint, but Plaintiff declined. (PUMF 22). Plaintiff eventually left the meeting, and shortly after 3 p.m., he saw Harper and Tilkes walking to Starbucks. Plaintiff contends he did not say or do anything to Harper or Wilkes. (PUMF 23).

Plaintiff left work at 4:15 p.m. on the day of his second meeting with Tilkes and Harper. Shortly after leaving, Plaintiff recieved a call from Ron Perring, the Chief Attorney for Major Crimes at the PDO, asking him to return to work to speek with Kenneth Taniguchi. (PUMF 24). Plaintiff returned to work and was

**4**

met by Taniguchi, Jim Dockery, and Gary Shinaver. Plaintiff was told he was being put on administrative leave and was directed to hand over his keys and ID. Taniguchi instructed Plaintiff not to go into or near the Dependency Office, the Courts, Crocker Building, Plaza Building, or Juvenile Hall. Plaintiff asked for a letter stating the reasons for Taniguchi's decision, but Taniguchi declined. (PUMF 25).

Taniguchi sent an email to all PDO employees advising them to have no contact with Plaintiff. (PUMF 26). On August 24, 2008, Taniguchi sent a letter to Plaintiff advising him that he was placed on paid administrative leave and reiterating that Plaintff was not to have contact with employees of the PDO or to be present at PDO facilities. (PUMF 27).

### III. <u>LEGAL STANDARD</u>.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier

of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." Id. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.
///
///

**IV. <u>DISCUSSION</u>.**

**A. Plaintiff's Fourth Cause of Action Under 42 U.S.C. § 1981 and California Government Code 12900 et seq.**

Plaintiff alleges that Defendant County of Fresno ("the County") took adverse employment action against him in retaliation for Plaintiff's corroboration of Muldrew's complaint against Alderete. (Complaint at 10). Plaintiff alleges that the adverse action taken against him was motivated in substantial part by attitudes hostile to African-Americans. (Id.).

**1. Section 1981**

Section 1981 prohibits retaliatory action motivated by racial discrimination. *E.g. Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1107 (9th Cir. 2008); *London v. Coopers & Lybrand*, 644 F.2d 811, 818 (1981) (distinguishing retaliation based on racial animus from other types of retaliatory action). To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Surrell*, 518 F.2d at 1108 (citation omitted). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. *Id*. A municipal entity may be held liable for the discriminatory actions of its top decision-maker. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

The complaint alleges that the County retaliated against Plaintiff for corroborating Muldrew's claim that Alderete was

discriminating against her on the basis of race. (Complaint at 9-10). Specifically, the complaint alleges:

> 54. Defendant County was aware of the racial motivation of Celia Alderete and its disparate effect upon Plaintiff Muldrew, yet failed and refused to correct Alderete's aforesaid conduct, thereby ratifying the same.
>
> 55. Defendant County's removal of Plaintiff Hise from his office, and the manner in which it occurred and his being ostracized from co-workers were in retaliation for Hise's corroboration of Plaintiff Muldrew's complaints and were intended to and did have a chilling effect on other employees so as to prevent others from coming forward or confirming Plaintiff Muldrew's reports of discrimination, harassment and retaliation.
>
> 56. Defendant County's placing of Plaintiff Hise on administrative leave pending investigation was motivated in substantial part by attitudes hostile to African-Americans; that Defendant Taniguchi was responsible for such acts and decisions and ratified all of the acts necessary to achieve the same.
>
> 57. Defendants used and/or allowed official policies, procedures and/or practices to retaliate against Plaintiff Hise on the basis of his association with and support of Plaintiff Muldrew in violation of the Fourteenth Amendment to the United States Constitution, 42 USC § 1981, and California Government Code section 12900, et.seq, prohibitions against racial discrimination and retaliation.

(Complaint at 9-10).

The record contains evidence sufficient to permit a rational jury to conclude that Plaintiff engaged in a protected activity by supporting Mudlrew's claim of racial discrimination during his interview with Tilkes and Harper. (Hise Dec. at 4; MSJ, Ex. O). The report prepared by Tilkes and Harper concerning Mudlrew's discrimination claim includes a section entitled "Background," which provides, in pertinent part:

> On July 24, 2008, Ivana Mudlrew...filed a formal discrimination complaint alleging that her supervisor...Celia Aldrete...has discriminated against her and created a hostile work environment...¶ In her written complaint, Ivana Muldrew alleges discrimination

**8**

> on the basis of race, color, retaliation, and hostile work environment. During the course of this administrative review, it was discovered that Ivana Muldrew had filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC)...The EEOC complaint includes allegation including [sic] racial discrimination...

(MSJ, Ex. O). Another section of the Tilkes and Harper report entitled "Interview <u>Darren Hise</u> -August 7, 2008, 2:00pm, Summary (Muldrew Witness)" recounts Plaintiff's interview, in pertinent part, as follows:

> Darren's discussion in this interview included... allegations currently under EEOC investigation and not subject to this review...¶ Darren spent a great deal of the interview explaining the same history and issues that Ivana had stated during her interview, none of which were subject [sic] of this administrative review...Because of the focus of his story and how closely it paralleled Ivana's, Darren was asked if he had discussed with Ivana her interview on August 5th, he stated he had not discussed her interview.

(MSJ, Ex. O at 7).

Plaintiff has met the first requirement of stating a prima facie claim under section 1981 by presenting evidence that he engaged in a protected activity when he corroborated Mudlrew's claims of discrimination during the interview with Tilkes and Harper. (Id.). Plaintiff has also met the second requirement of stating a prima facie section 1981 claim by presenting evidence that he suffered adverse employment action; it is undisputed that Plaintiff was placed on administrative leave on August 21, 2008.[2]

---

[2] In opposition to Defendant's motion for summary judgement, Plaintiff suggests that Taniguichi's decision to demote Plaintiff in March 2009 also constituted retaliatory action. (Opposition at 5). However, the complaint unequivocally alleges that the adverse employment action taken against Plaintiff was the decision to place Plaintiff on administrative leave. It is axiomatic that Plaintiff's complaint, filed in January 2009, could not have been based on retaliatory action that had not yet occurred; i.e. the March 13, 2009 demotion notice.

**9**

(MSJ, Ex. B, Taniguichi Dec. at 2; Hise Dec. at 5; Hise Dec. Exs. 2A, 2B). Whether a causal connection existed between Plaintiff's protected activity and his placement on administrative leave is subject to a factual dispute.

There is evidence on the record sufficient to permit a rational jury to conclude that at the time Taniguichi decided to place Plaintiff on leave, Taniguichi was aware that Plaintiff supported Muldrew's claim of racial discrimination. Taniguichi reviewed Muldrew's July 24, 2008 discrimination complaint, which included Plaintiff's signature. (Taniguichi Dec. at 4). Taniguichi also reviewed an EEOC complaint filed by Muldrew in February of 2008. (Id). Before placing Plaintiff on administrative leave, Taniguichi reviewed memos prepared by Tilkes and Harper regarding what had happened during Plaintiff's August 21, 2008 interview Tilkes and Harper. (Id. at 3). Taniguichi's knowledge regarding Muldrew's various discrimination complaints, his knowledge that Plaintiff had signed Mudlrew's July 18 letter, and his knowledge that Plaintiff had been interviewed in connection with Mudlrew's July 24 complaint support a rational inference that Taniguichi knew Plaintiff was supporting Muldrew's claims of racial discrimination at the PDO when he placed Plaintiff on administrative leave.

Defendants' purported non-discriminatory reason for placing Plaintiff on administrative leave is also subject to a factual dispute. According to Taniguchi, Plaintiff was placed on leave due to his conduct during his August 21, 2008 meeting with Tilkes and Harper, as well as other blemishes on Plaintiff's employment record. (Taniguichi Dec. at 3). In a report prepared by Harper

**10**

following the August 21 meeting, Harper stated that Plaintiff became aggressive and caused Harper to fear for her personal safety. (MSJ, Ex. S). However, Plaintiff contests Harper's version of the August 21 meeting, and a reasonable jury could accept Plaintiff's version of the facts and conclude that Taniguichi's reliance on Tilkes and Harper's account of the August 21 meeting was a pretext for retaliation. (Opposition, Ex. 1 at 182-85). Accordingly, questions of fact preclude summary judgement on Plaintiff's retaliation claim.

**2. California Government Code section 12900 et seq.**

The complaint fails to specify the nature of Plaintiff's claim under California's Fair Housing and Employment Act. However, the allegations contained in the section of the complaint entitled "<u>Fourth Cause of Action</u>: Discrimination, Retaliation" clearly pertain to section 12940(h), which provides that it shall be an unlawful employment practice

> for any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Cal. Gov. Code § 12940(h). As discussed above, factual disputes preclude summary judgment on Plaintiff's federal retaliation claim. For the same reasons, Defendants are not entitled to summary judgment on Plaintiff's state-law retaliation claim.

**B. Plaintiff's Claim Under 29 U.S.C. § 2615(A)(1) and California Government Code 12945.2**

The complaint alleges that Taniguchi violated 29 U.S.C. § 2615(a)(1) and California Government Code 12945.2 by asking

**11**

Plaintiff to divulge medical information and subsequently reprimanding Plaintiff for failing to comply with his requests. (Complaint at 11-12). Section 2615(a)(1) provides:

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS §§ 2611 et seq.].

An employer may not discourage an employee from taking FMLA leave. *Xin Liu v. Amway*, 347 F.3d 1125, 1134-35 (9th Cir. 2003). Like the FMLA, California Government Code section 12945.2 confers rights to family and personal medical leave. California Government Code 12945.2(l) provides:

> It shall be an unlawful employment practice for an employer to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of any of the following:
>
>  (1) An individual's exercise of the right to family care and medical leave provided by subdivision (a).
>
>  (2) An individual's giving information or testimony as to his or her own family care and medical leave, or another person's family care and medical leave, in any inquiry or proceeding related to rights guaranteed under this section.

The elements of a cause of action under California Government Code section 12945.2(l)as follows: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave. *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 262 (Cal. Ct. App. 2001).

At oral argument, Plaintiff's counsel conceded that Plaintiff ultimately received all the medical leave he requested, and that summary judgment should be granted as to Plaintiff's claims under the FMLA and California Government Code section 12945.2. Accordingly, Defendants' motion for summary judgment on the fifth cause of action asserted in the complaint is GRANTED.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Defendants' motion for summary judgment on Plaintiff Hise's fourth cause of action for retaliation under 42 U.S.C. § 1981 and Cal. Gov. Code § 12900 is DENIED;

2) Defendants' motion for summary judgment on Plaintiff Hise's fifth cause of action under 29 U.S.C. § 2615(a)(1) and Cal. Gov. Code § 12945.2 is GRANTED; and,

3) Defendants shall submit a form of order consistent with this Memorandum Decision within five (5) days following electronic service of this decision.

IT IS SO ORDERED.

**Dated:   August 10, 2010**              /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE